UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **RICHARD TUSO,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**LENNAR CORPORATION** a Delaware registered corporation,<br><br>*Defendant,* | Case No. 1:23-cv-22264-ALTMAN/Reid<br><br>**CLASS ACTION** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Richard Tuso ("Plaintiff Tuso" or "Tuso") brings this Class Action Complaint and Demand for Jury Trial against Defendant Lennar Corporation ("Defendant" or "Lennar") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Tuso, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1. Plaintiff Tuso is a resident of Roseville, California.

2. Defendant Lennar is a corporation registered in Delaware, with its headquarters located in Miami, Florida. Defendant Lennar conducts business throughout this District and throughout the US, including California.

**JURISDICTION AND VENUE**

1

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction and venue is proper in this District under 28 U.S.C. § 1391(b) since the Defendant resides in this District and sends telecommunication messages to consumers from this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in April 2023 alone, at a rate of 151.6 million per day. www.robocallindex.com (last visited May 28, 2023).

2

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. Lennar is a homebuilder that sells homes throughout the U.S.[3]

14. In order to sell the properties it buulds, Defendant Lennar directly purchases leads from Zillow, including the Plaintiff's lead.

15. Defendant Lennar then directs that lead to its appropriate Lennar subsidiary in the geographic area that the lead is located in for the subsidiary to call the lead to sell them a Lennar built property, including the Plaintiff's lead.

16. The Lennar subsidiary then places the sales call to the lead using a dialer provided by Defendant Lennar to its subsidiary, including to call Plaintiff's lead.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/lennar/about/

3

17. Defendant Lennar provides the scripts for the subsidiaries and Lennar Sales Corporation to use when making the sales calls to the Zillow leads, including to call Plaintiff's lead.

18. Defendant Lennar financially benefits from the property sales by its subsidiaries to the Zillow leads it provides them.

19. Lennar also benefits from the calls to the Zillow leads made at its direction by its subsidiaries by attempting to sell the leads other products, like title insurance and closing services.

20. The Federal Communication Commission has instructed that corporations such as Lennar may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

21. Unfortunately, some of these calls from Lennar are being placed to consumers without consent, including to consumers that registered their phone numbers on the DNC, as per Plaintiff's experience.

22. To make matters worse, Lennar lacks a sufficient opt-out system to ensure that a consumer who notifies Lennar to stop calling them will be removed from their calling list.

23. Placing cold calls, or unsolicited calls to consumers appears to be a core part of Lennar's business. Job postings for different Lennar positions list cold calling as a required qualification, including:

Job posting for a Mortgage Loan Origination Associate:

**Qualifications**

- Bachelor's degree and at least 3 years of work experience in a relevant field or MBA degree with relevant experience.
- Mortgage brokerage, investment sales or mortgage banking experience.
- Ability to cold call and generate new business
- Experience with equity and debt financing transactions.
- Experience with due-diligence and transaction management processes.
- Fundamental financial modeling skills and experience of building/maintaining underwriting models.
- Experience preparing and maintaining presentations and other process documents
- Strong team orientation with a demonstrated ability to work effectively with team members across multiple groups and regions
- Excellent communication, presentation, and critical thinking skills
- Solid work ethic, self-motivation and drive, and strong attention to detail
- Personal integrity, initiative, and leadership qualities
- Capacity to interact with a wide range of clients both in person and on the phone
- Ability to multitask and manage numerous transactions simultaneously in various stages at all times.

[4]

24. In response to these calls, Plaintiff Tuso brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF TUSO'S ALLEGATIONS

25. Plaintiff Tuso registered his cell phone number on the DNC on July 2, 2003.

26. Plaintiff Tuso uses his cell phone number for personal use only as one would use a landline telephone number in a home.

27. The calls that Plaintiff Tuso received from Defendant Lennar were all received more than 31 days after Plaintiff registered his cell phone number on the DNC.

---

[4] https://tarta.ai/j/nddcSoABCr2uuunQnVOg-commercial-loan-origination-associate-in-miami-fl-at-lennar-homes

5

28. On March 20, 2023 at 12:52 PM, Plaintiff Tuso received an unsolicited call to his cell phone number from a Lennar employee soliciting the sale of a Lennar property from the phone number 916-245-7423. The employee identified herself as Danielle from Lennar. Plaintiff told Danielle that he was not looking to purchase a property

29. When 916-245-7423 is called, an automated system identifies the company name as Lennar and directs the caller to visit Lennar.com.

30. Plaintiff received a 2nd unsolicited call to his cell phone on April 25, 2023 at 3:16 PM from 916-245-7423. As with the previous call, this call was from Danielle who was calling to sell a Lennar property to Plaintiff Tuso.

31. Plaintiff Tuso has never done business with Lennar or consented to be contacted by them.

32. Plaintiff Tuso was not looking to buy or view any properties.

33. The unauthorized solicitation telephone calls that Plaintiff received from or on behalf of Defendant Lennar have harmed Plaintiff Tuso in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

34. Seeking redress for these injuries, Plaintiff Tuso, on behalf of himself and Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

35. Plaintiff Tuso brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Lennar called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

36. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Tuso anticipates the need to amend the Class definition following appropriate discovery.

37. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

38. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

39. **Adequate Representation**: Plaintiff Tuso will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class

actions. Plaintiff Tuso has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Tuso and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Tuso nor his counsel have any interest adverse to the Class.

40. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Tuso. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Tuso and the Do Not Call Registry Class)

41. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

42. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who

8

do not wish to receive telephone solicitations that is maintained by the federal government."

43. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

44. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Tuso and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

45. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Tuso and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

46. As a result of Defendant's conduct as alleged herein, Plaintiff Tuso and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

47. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Tuso requests a jury trial.

DATED this 4th day of April, 2024.

RICHARD TUSO, individually and on behalf of all others similarly situated,

/s/ Avi R. Kaufman
Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 S. Dixie Hwy, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

Stefan Coleman
COLEMAN PLLC
66 West Flagler Street
Suite 900
Miami, FL 33130
(877) 333-9427
law@stefancoleman.com

*Attorneys for Plaintiff and the putative Class*