UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:23-cv-22264-RKA

RICHARD TUSO, individually and on
behalf of all others similarly situated,

    Plaintiff,

v.

LENNAR CORPORATION a Delaware
registered corporation,

    Defendant.
_____/

### DEFENDANT LENNAR CORPORATION'S MOTION TO DISMISS WITH PREJUDICE PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT AND TO STRIKE CLASS ALLEGATIONS, AND INCORPORATED MEMORANDUM OF LAW

Defendant, LENNAR CORPORATION ("**Defendant**"), by and through its undersigned counsel, pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, hereby moves to dismiss with prejudice the claims asserted against it in the First Amended Class Action Complaint ("**FAC**") [ECF No. 61] filed by Plaintiff, RICHARD TUSO ("**Plaintiff**"), to strike the class allegations, and to strike paragraph 23 of the FAC, and in support thereof states as follows:

### INTRODUCTION

This is a TCPA class action lawsuit arising out of two allegedly unsolicited phone calls Plaintiff claims he received. On March 22, 2204, the Court granted Defendant's renewed motion to dismiss the complaint, finding that Plaintiff "failed to state a claim against Lennar Corporation under a theory of *either* direct *or* vicarious liability." *See* ECF No. 58 ("**MTD Order**"). With respect to a direct liability claim, the Court found that Plaintiff failed to allege that Defendant

initiated either of the two allegedly unsolicited phone calls. MTD Order at 6. With respect to a vicarious liability claim, the Court found that Plaintiff failed to allege facts to allow the Court to infer an agency relationship between Defendant and any other entity. *Id.* at 7. Though Plaintiff amended his complaint to attempt to assert a vicarious liability claim against Defendant,[1] the FAC again fails to state a claim and should be dismissed with prejudice.

*First*, the FAC lacks sufficient factual allegations to plausibly allege an agency relationship between Defendant and any other entity—which is necessary to state a claim for vicarious liability against Defendant.

*Second*, the FAC fails to allege the two phone calls at issue are solicitations. Plaintiff, instead, granted express written consent to be contacted by non-party Lennar Sales Corp. ("**Lennar Sales**"). The consent included Plaintiff's full name, phone number, and email address, and requested specific times that Plaintiff wanted to tour the two different homes. Lennar Sales' follow-up calls to Plaintiff are fully compliant with the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227(c)(5) ("**TCPA**").

*Third*, the FAC fails to sufficiently allege that Plaintiff is a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons," which is necessary to state a TCPA claim under 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

---

[1] Plaintiff does not plead that Defendant initiated either of the allegedly unsolicited phone calls, and thus there is no direct liability claim against Defendant. *Compare* MTD Order at 6 ("A person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call … This generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call.") *with* FAC ¶ 15-17 (alleging that Defendant directs certain leads to a subsidiary, where the subsidiary is the entity that allegedly places the telephone calls).

*Fourth*, the Court should strike the class allegations because (1) Plaintiff lacks standing; (2) Plaintiff's claims are not typical of the putative class; (3) individualized issues predominate, and (4) the class definition is overbroad.

*Lastly*, the Court should strike paragraph 23 of the FAC because it is irrelevant, immaterial, scandalous and prejudicial to Defendant.

## BACKGROUND

Defendant is a leading homebuilder providing homes for first-time, move-up, luxury, urban and active adult buyers. *See* FAC ¶ 13 fn3. Lennar Sales, however, is the licensed brokerage which employed the individual referenced in the FAC ("Danielle from Lennar," FAC ¶¶ 28, 30) who called Plaintiff. Plaintiff asserts that on March 20, 2023, he received a call to his cell phone number (which number he does not disclose) soliciting the sale of property. *Id.* ¶ 28. Plaintiff alleges he responded that he was not looking to purchase property. *Id.* On April 25, 2023, Plaintiff alleges he received a second call regarding the sale of property. *Id.* ¶ 30. Plaintiff then filed this lawsuit claiming he has "never done business with Lennar or consented to be contacted by them." *Id.* ¶ 31. Plaintiff alleges that his number was on the Do-Not Call List ("**DNC List**"), thereby violating the TCPA. *Id.* at ¶ 45.

### A. Background: The Full and Fair Record Of The Phone Calls

Plaintiff expressly incorporates into the FAC the two allegedly unsolicited phone calls. *Id.* ¶¶ 28, 30. In doing so, he relies upon the phone calls' content, claiming that he is positioned exactly like all other call recipients. As such, this Court can and should consider the full extent and history of the referenced phone calls. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("The court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed."); *see also Kawa Orthodontics LLP v. Lab. Corp. of Am. Holdings*, 2019 WL 7371821,

3

at *1 (S.D. Fla. Oct. 30, 2019) (holding that a contract attached to the motion to dismiss may be considered where it "provides necessary context for Plaintiff's claims and Defendant does not dispute that the contract is authentic"); *Solomon v. Navient Sols*., LLC, 8:18-CV-2635-T-30JSS, 2019 WL 13246588, at *2 (M.D. Fla. Mar. 14, 2019) (*citing Fin. Sec. Assur., Inc. v. Stephens, Inc*., 500 F.3d 1276, 1284 (11th Cir. 2007) (explaining that courts can look outside the complaint for a motion to dismiss when "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss."))[2]

The rules of completeness and consideration of fairness forbid Plaintiff from providing the Court only *some* context of the phone calls (those convenient for him) but not all. Accordingly, this Court may take judicial notice of and consider the complete phone call history attached hereto as **Exhibit A** and described herein. The complete phone call history demonstrates that (1) Lennar Sales *did* have prior express written consent for both phone calls to Plaintiff's number; (2) Danielle Barnes of Lennar Sales made both calls to Plaintiff in response to Plaintiff's written inquiries; and (3) Plaintiff's facts are entirely incongruous with the class of persons he purports to represents.

On March 20, 2023, Plaintiff, or someone acting on his behalf, used a third-party website, Zillow.com ("**Zillow**") to request that Plaintiff be contacted to schedule a tour of Residence 1438 Plan, Belle Maison At Campus Oaks, Roseville, CA 95747. *See* **Exhibit "A,"** at 1, 3. The user

---

[2] In similar cases involving marketing text messaging, courts across the country have taken judicial notice of the full history of text messages between the parties in cases where the plaintiff references or attaches portions of the text messages and relies upon them in support of his or her claim. *See Abe v. Hyundai Motor Am., Inc.* 2019 WL 6647938, at *2 (C.D. Cal. Aug. 27, 2019) (granting defendant's "request for judicial notice of the full text message exchange with plaintiff" because the "FAC necessarily relie[d] upon its contents in support of its TCPA claim"); *Miller v. Easy Day Studios Pty Ltd.*, 2021 WL 4209205, at *2 (S.D. Cal. Sept. 16, 2021) (taking judicial notice of complete "text message exchange" where plaintiff "reference[d] this exchange in his Complaint").

4

selected an in-person tour on March 21 at 10:00AM and filled out the form which asked: "How should the builder contact you to confirm the tour?" *See id.* at 3. The user then input Richard Tuso's first and last name, phone number (x2288), and email address ([redacted]@gmail.com). *See id.* at 2. Lennar Sales received Plaintiff's request to be contacted to confirm his tour. *See id.* at 1. On April 25, 2023, Plaintiff went through the same exercise and requested a tour of a different property: Residence 2423 Plan, Heritage Placer Vineyards, Active Adult: Lazio, Active Ad, Roseville, CA 95747, on April 26, 2023, at 1:00PM. *See id.* at 1, 3. Lennar Sales again received Plaintiff's request to be contacted to confirm his tour, as seen below.

> Customer Comments
> I am interested in Residence 1438 Plan, Belle Maison At Campus Oaks, Roseville, CA 95747. I would like to schedule a tour for Tuesday, March 21 2023 at 10:00 AM You can reach me at: [redacted]2288 I found this property on Zillow
> I am interested in Residence 2423 Plan, Heritage Placer Vineyards | Active Adult : Lazio | Active Ad, Roseville, CA 95747. I would like to schedule a tour for Wednesday, April 26 2023 at 1:00 PM You can reach me at: [redacted]-2288 I found this property on Zillow

*See id.* at 3. After receiving the first inquiry from Plaintiff, Lennar Sales' agent contacted Plaintiff regarding the Belle Maison At Campus Oaks property on March 20, 2023. *See id.* at 1; FAC ¶ 28. On April 25, 2023, after receiving the second inquiry from Plaintiff, Lennar Sales' agent contacted Plaintiff regarding the Heritage Placer Vineyards property. *See id.* at 1; FAC. Plaintiff alleges that Defendant, who did not initiate the calls, violated the TCPA by these two contacts. Plaintiff alleges that each and every person in the United States who received a phone call from Defendant, within any 12-month period, who is in the DNC Registry is a putative class member. FAC ¶ 35.

## **MOTION TO DISMISS STANDARD**

Defendant moves to dismiss the FAC pursuant to Rule 12(b)(6). In order to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Applying these settled legal standards, the Court should dismiss the FAC.

**ARGUMENTS & AUTHORITIES**

**I.     PLAINTIFF AGAIN FAILS TO ADEQUALEY PLEAD LIABILITY AGAINST DEFENDANT LENNAR CORPORATION**

   **A. Plaintiff Fails to Plead Defendant's Vicarious Liability**

Plaintiff has not sufficiently alleged that Defendant is in an agency relationship with any other entity such that Defendant should be liable for another entity's allegedly tortious actions. In fact, Plaintiff *does not even plead the name of the third-party entity over which Defendant allegedly has an agency relationship*. His purported claim for vicarious liability thus fails.

To plead TCPA vicarious liability, a plaintiff must allege a factual basis that gives rise to an inference of an agency relationship between the defendant and the third-party caller. *See Hossfeld v. American Financial Security Life Insurance Company*, 544 F.Supp.3d 1323, 1331-32 (S.D. Fla. 2021). The plaintiff must plausibly allege that the defendant is liable under a theory of either 1) actual agency, 2) apparent authority, or 3) ratification. *See Hossfeld*, 544 F. Supp. 3d at 1332. A plaintiff must further plead more than conclusory allegations regardless of which vicarious liability theory it relies upon. *See Abramson v. 1 Global Capital, LLC*, 2015 WL 1256431 at *3 (S.D. Fla. Sep. 23, 2015) (dismissing the plaintiff's TCPA vicarious liability allegations for failure to plead non-conclusory allegations); *Jackson v. Caribbean Cruise Line, Inc.*, 88 F.Supp.3d 129 (E.D.N.Y. 2015) (same).

   *i.    Plaintiff Does Not Adequately Plead Actual Agency Via Substantial Control*

To plead actual agency, the plaintiff "must allege enough facts to show that [the defendant] exercised substantial control over the third-party telemarketer agents' actions." *Hossfeld*, 544 F. Supp. 3d at. at 1332. In *Hossfeld*, the Court denied the defendant's motion to dismiss the TCPA vicarious liability claim because the plaintiff pled enough facts to allow the court to infer an agency relationship to support actual agency. *See id.* The *Hossfeld* plaintiff not only pled the names and identities of the third parties who placed the phone calls, but he alleged over nine pages of facts explaining the relationship between the named defendant and the entity that made the calls (including the policies, practices and procedures relevant to the relationship), how the named defendant controlled and directed the third party calling entity to make the calls, and non-conclusory allegations about how the defendant funded and benefited from the third party's conduct. *See Hossfeld*, 544 F.Supp.3d at 1332; *Hossfeld*, 19-cv-60597-DPG, ECF No. 140 (Second Amended Complaint) at 21-29; *see also Snyder v. iCard Gift Card*, LLC, 2017 WL 10379592 at *3 (S.D. Fla. May 11, 2017) (denying motion to dismiss where the plaintiff pled detailed allegations concerning the contractual relationship between the defendant and the third party, including non-conclusory details about their intricate involvement and intertwinement).

In contrast, in *Jackson v. Caribbean Cruise Line, Inc.*, 88 F.Supp.3d 129 (E.D.N.Y. 2015), the court dismissed the TCPA vicarious liability claim for lack of a plausibly alleged agency relationship, where the plaintiff pled that the defendant, a text message sender, was "responsible for making or causing the making of" the messages, "contracted with" the marketing firm to send the text messages, and that the marketing firm "sent the text message calls on behalf of, and <u>at the direction of</u>" the defendant. *Id.* at 138 (emphasis added). The court found these allegations insufficient to support an agency relationship. *Id.* at 138-39. The plaintiff failed to plead whether and how "[the principal] had the power to give "interim instructions" to [the purported agent], or

7

any non-conclusory suggestion of "direction" or "control" by [the principal] of [the purported agent]." *Id.*; *Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1357 (S.D. Fla. 2016) (dismissing vicarious liability claim where plaintiff "parrot[ted] the elements of an actual agency relationship by offering conclusory allegations regarding the defendant's control over the third party tortfeasor.").

Here, Plaintiff does not plead sufficient allegations to allow the Court to "determine [that] there is a factual basis that gives rise to an inference of an agency relationship," to support his vicarious liability claim. MTD Order at 6 (citing *Hossfeld*, 544 F.Supp.3d at 1332). Plaintiff alleges that: 1) Defendant provides leads, a script, and a dialer to unnamed subsidiaries, 2) that Defendant "directs" its leads to unnamed subsidiaries, and 3) that Defendant "benefits financially" from "property sales" that the unnamed subsidiaries make. *See* FAC ¶¶ 14-20. Put simply, under *Hossfeld*, *Snyder*, and *Jackson*, these allegations fail to adequately plead an agency relationship.

At the outset, Plaintiff does not plead the name or identity of the "appropriate Lennar subsidiary" to which he repeatedly refers, and over which Defendant is supposed to have had an agency relationship. *See id.* ¶¶ 15-18. Plaintiff's agency allegations, and his vicarious liability claim against Defendant, thus fail before even turning to any analysis of substantial control. *See Clemons v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 4193997, *4 (C.D. Ill. 2020) ("[T]he Amended Complaint fails to describe any ... contract, its terms, <u>or even indicate with whom State Farm is alleged to have contracted with</u>. Plaintiffs also fail to explain how Defendant controlled any aspect of the telemarketing calls, such as their time, volume, or quality.") (Emphasis added); *Hossfeld*, 544 F.Supp.3d 1323, 19-cv-60597-DPG, ECF No. 140, Second Amended Complaint ¶ 27) (identifying the three insurance agents who allegedly performed telemarketing on the defendants' behalf"); *Worsham v. TSS Consulting Group, LLC*, 2023 WL 2664203 at *8 (M.D. Fla. Mar. 28, 2023) (a

8

TCPA plaintiff cannot fail to "identify" the entity that made the unsolicited calls, nor can he rely on "pure speculation" to establish the defendant's vicarious liability); *Snyder*, 2017 WL 10379592 at *2 (denying motion to dismiss TCPA vicarious liability claim where plaintiff alleged not only the identity of the third party caller, but also named the caller as a defendant in the action and alleged specific details and facts supporting apparent authority and ratification).

Moreover, Plaintiff fails to allege how Defendant exercises "substantial control" over a third party. *See* MTD Order at 7 (citing *Snyder*, 2017 WL 10379592, at *2). Plaintiff's allegations boil down to: 1) Defendant provides leads, a script, and a dialer to unnamed subsidiaries to "use," and then 2) "directs" the leads to the unnamed subsidiary. *See* FAC ¶¶ 15-17, 19. These allegations do not plead substantial control. *See Melito v. American Eagle Outfitters, Inc.*, 2015 WL 7736547 at *6-7 (S.D.N.Y. Nov. 30, 2015) (dismissing TCPA actual agency claim, explaining that, "[w]ith regards to control, "[i]t is clear that 'the right of control by the principal may be exercised by prescribing what the agent shall or shall not do before the agent acts, or at the time when he acts, or at both times.'" (quoting Restatement 2d § 14 cmt. a))" (emphasis added). Thus, no such actual or substantial control is adequately alleged.

Nor does Plaintiff allege how Defendant "directs" the unnamed subsidiary, or plead how much, if at all, the unnamed subsidiary is bound to do what Defendant "directs" it to do. *See Melito*, 2015 WL 7736547 at *6-7.[3] Worse still, Plaintiff's allegations are conclusory. *See Reo v. Caribbean Cruise Line, Inc.*, 2016 WL 1109042 at *5 (N.D. Oh. Mar. 18, 2016) ("like the deficient allegations

---

[3] *Compare* FAC ¶ 15 (alleging that Defendant sends a lead to a Lennar subsidiary but failing to allege that Defendant instructs the unnamed subsidiary to actually perform some overt act) *with Snyder*, 2017 WL 10379592 at *3 ("not only does CashStar provide its gift card products to iCard to sell, iCard utilizes CashStar's system to fulfill customer orders, and CashStar fulfills the gift card orders taken by iCard on its behalf. Furthermore, CashStar specifically directs iCard to market and promote CashStar's gift cards to consumers through advertising campaign.").

9

in *Jackson*, the sparse allegations made here do not allege any facts that show that CCL had any power to give interim instructions or otherwise had any control over the performance of Gulf Coast or TMS."). Again, Plaintiff's allegations are insufficient.

  i. *Plaintiff Does Not Adequately Plead Apparent Authority or Ratification*

To plead apparent authority, the plaintiff must allege: "(1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by a third party in reliance upon such a relationship." *Cabrera v. Gov't Emps. Ins. Co.*, 452 F. Supp. 3d 1305, 1316 (S.D. Fla. 2014).

Regarding ratification, a principal may ratify an agent's acts after they are taken by "manifesting assent that the act shall affect the person's legal relations, or" by engaging in "conduct that justifies a reasonable assumption that the person so consents." *See GDG Acquisitions LLC v. Gov't of Belize*, 849 F.3d 1299, 1308 (11th Cir. 2017) (citing Restatement 3d Agency § 4.01 (2006)). Thus, a principal may only ratify an agent's conduct by failing to act if it knowingly accepts the benefits of such conduct. *See id* cmt. g ("A person may ratify an act ... by receiving or retaining benefits it generates if the person has knowledge of material facts and no independent claim to the benefit.") (emphasis added).

Here, Plaintiff does not allege apparent authority. Rather, Plaintiff alleges that "Defendant Lennar" "directs" certain Zillow leads to an "appropriate Lennar subsidiary." FAC. ¶ 15. At no point does Plaintiff allege that Defendant made any representations that, as a principal, would have caused Plaintiff to believe that any unnamed entity had apparent authority to act on Defendant's behalf, nor that Defendant affirmed any act done by any other entity. *See Cunningham v. Kondaur Capital*, 2014 WL 8335868 at *7 (M.D. Tenn Nov. 19, 2014) (plaintiff failed to allege that

10

defendant took any actions as principal that would have caused plaintiff to believe that third-party entities had apparent authority to act on defendant's behalf).

Likewise, Plaintiff does not allege ratification. The FAC is silent in alleging that Defendant ratified any other entity's acts. *See GDG Acquisitions*, at 1308. Plaintiff never pleads what acts the unnamed subsidiary took that Defendant ratified, nor identify the benefits that allegedly inured to Defendant to which it had no "independent claim." *See id.* at 1309. For these reasons as well, the FAC should be dismissed.

### B. Plaintiff Fails to Plead Defendant's Direct Liability as an 'Initiator'

For the avoidance of any doubt, the FAC also fails to adequately allege direct liability against Defendant because Plaintiff does not allege that Defendant initiated either of the two allegedly unsolicited phone calls. "Direct liability under the TCPA ... applies only to entities that 'initiate' the telemarketing calls." *Hossfeld v. American Financial Security Life Insurance Company*, 544 F.Supp.3d 1323 (S.D. Fla. June 16, 2021). A person or entity "initiates" a telephone call when "it takes the steps necessary to physically place a telephone call." *Id.* (citation omitted); *see also Gayle v. Bill Holt Automotive*, 2023 WL 6192733 at *9 (N.D. Ga. July 10, 2023). Courts have found "no direct liability when the seller itself did not place the offending phone call. *See id.* Because Defendant did not place the offensive phone calls, the Court should find that that Plaintiff has not adequately pled direct liability. *See* MTD Order at 7; *Cunningham v. Lifestyles Development, LLC*, 2019 WL 4282039 (E.D. Tex. Aug. 8, 2019) ("Because Plaintiff does not allege that RCI actually initiated a phone call in violation of the TCPA […] he has not shown that RCI is directly liable for any of the offending phone calls."); *see Gayle v. Bill Holt Auto., Inc.*, 2023 WL 6192733, at *9 (N.D. Ga. July 10, 2023) (finding that the plaintiff failed to show that "[d]efendant MMNA could be held directly liable pursuant to the TCPA" because "the facts he pleads do not

11

plausibly support the contention that [d]efendant MMNA itself was involved in sending the texts in any way"). The FAC, like its predecessor, fails to allege direct liability against this Defendant.

## II. THE FAC FAILS TO PLEAD A CAUSE OF ACTION BECAUSE THE CALL WAS NOT A TELEPHONE SOLICITATION UNDER THE TCPA

The two calls at issue in the FAC are not "solicitations" as defined by the TCPA for two independent reasons. Liability does not exist under 47 C.F.R. § 64.1200(c)(2) if the person or entity making the telephone solicitations "has obtained the subscriber's prior express invitation or permission. Such permission must be evidence by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed." 47 C.F.R. § 64.1200(c)(ii).

Here, the record demonstrates that Lennar Sales had prior express written consent to contact Plaintiff in the form of Plaintiff's first name, last name, phone number, and email address in response to two separate inquiries for two separate properties. *See* Ex. B at 2-3. Where, as here, Plaintiff has given his invitation to be called, his TCPA claim fails as a matter of law. *See e.g Murphy v. DCI Biologicals Orlando*, LLC, , 2013 WL 6865772, at *9 (M.D. Fla. Dec. 31, 2013), aff'd, 797 F.3d 1302 (11th Cir. 2015) (dismissing solicitation claim finding that the plaintiff provided his number to defendant).

Second, TCPA regulations exempt from the definition of "solicitation" any calls made to persons "with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(f)(15)(ii). An "established business relationship ... means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber." 47 C.F.R. § 64.1200(f)(5). An established business relationship was formed when, on two separate occasions, Plaintiff submitted an inquiry requesting to be contacted to tour the properties *See* Ex. B at 3. *See also Zononi v. CHW Group, Inc.*, 22-CV-14358, 2023 WL 2667941,

12

at *3 (S.D. Fla. Mar. 7, 2023) (dismissing plaintiff's TCPA claim because plaintiff had an established business relationship with defendant and, thus, the texts failed to qualify as solicitations); *Sardinas v. Geithner*, 2010 WL 2696626, at *3 (D. Nev. July 6, 2010) ("[C]alls by entities with established business relationships with a consumer are exempt from the Telephone Consumer Protection Act."). Thus, the FAC should be dismissed.

### III. PLAINTIFF FAILS TO PLEAD FACTS SUPPORTING THE ESSENTIAL ELEMENTS OF HIS DNC CLAIM

As Plaintiff acknowledges, the TCPA's DNC Registry provision applies *only* to subscribers of *residential* telephone numbers. FAC. ¶¶ 42-43 *citing* 47 C.F.R. § 64.1200(c) and 47 U.S.C. § 227(c). Consequently, Plaintiff must plausibly plead that his telephone number is a "residential" telephone number. Because Plaintiff does not do so, his claim fails.

In order to state a claim under 47 U.S.C. § 227(c), the plaintiff must allege sufficient facts illustrating how the telephone line at issue is used for residential purposes. *See Gaker v. Q3M Insurance Solutions*, 2023 WL 2472649 (W.D. N.C. Feb. 8, 2023) (dismissal warranted where the plaintiff failed to allege sufficient facts as how her phone line was 'residential' under 47 U.S.C. § 227(c)); *Hicks v. Alarm.com Inc.*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (dismissing claim where plaintiff only alleged his phone was "not associated with a business and is for personal use" but not if it was used for "residential" purposes); *Cunningham v. Rapid Capital Funding, LLC/RCF*, 2017 WL 3574451, at *3 (M.D. Tenn. July 27, 2017) ("As Plaintiff has not alleged facts showing his cell phones are used for residential purposes, he fails to state a claim[.]").

Here, the Court should find that Plaintiff fails to plead "adequate factual support" as to how "the use of his phone" is residential. *See Hicks*, 2020 WL 9261758, at *5. Plaintiff does not allege that his phone is used exclusively (if at all) for "residential" purposes. Instead, he insufficiently concludes that his cellphone is a "cellphone" and is for "personal use." FAC ¶¶ 25-26. This is

13

insufficient under the statute, as well as persuasive authority, to plead a DNC claim. Therefore, dismissal is warranted.

## IV. PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE STRICKEN

A district court, upon proper motion, may strike class action allegations prior to the plaintiff's motion for class certification. *See Griffin v. Singletary*, 17 F.3d 356, 361 (11th Cir. 1994); *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1216 n.37 (11th Cir. 2003).

### A. Plaintiff Class Allegations Should Be Stricken As Inconsistent With The Class Definition

Plaintiff purports to bring his TCPA claim as a "Class of similarly situated individuals[.]" Compl. ¶ 34. But Plaintiff is not "similarly situated" to his proposed class. Plaintiff lacks standing because the class allegations are internally inconsistent and thus do not satisfy the requirements for maintaining a class action. *See Griffin v. Dugger*, 823 F.22d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification must begin with the issue of standing."). Plaintiff claims to represent the following proposed class:

> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Lennar called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number has been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

FAC ¶ 35. But Plaintiff's purported class does not align with *his* claim. Indeed, a class that is consistent with Plaintiff's claim would be comprised of only those individuals that received a phone call from Lennar Sales after Lennar Sales received an express request to tour the property. For that reason, Plaintiff's class allegations should be stricken. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 (11th Cir. 2009) (vacating order granting certification, holding "that the complaint, as pled cannot sustain class action certification as a matter of law"). In other words,

Plaintiff's unique factual circumstances make class certification impossible. *See Romano v. Motorola, Inc.*, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) (concluding that court's dismissal of class allegation prior to discovery acknowledges impossibility of class certification based on pleadings). Thus, the Court should strike Plaintiff's class allegations.

      **B.**    **<u>Plaintiff's Claims Are Not Typical of The Claims Of The Putative Class</u>**

While the deficiencies in Plaintiff's TCPA claim should result in dismissal, at the very least they highlight why Plaintiff is not typical of the class and therefore cannot satisfy Rule 23(a)(3). Typicality "focuses on the class representative's individual characteristics in comparison to those of the proposed class." *In re Checking Account Overdraft Litigation*, 307 F.R.D. 656, 669 (S.D. Fla. 2015). The test for determining typicality centers on "whether other members have the same or similar injury, ***whether the action is based on conduct which is not unique to the named class plaintiffs***, and whether other class members have been injured ***by the same course of conduct***." *Id.* (Emphasis added). "Typicality is not present if the class representatives are subject to unique defenses that could be central to the litigation." *Hively v. Northlake Foods, Inc.*, 191 F.R.D. 661, 668 (M.D. Fla. 2000). The concern is that unique defenses will pose a distraction and otherwise preoccupy the named plaintiff to the detriment of the interest of absent class members. *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 478–79 (S.D. Fla. 2006); *Dyer v. Publix Super Markets, Inc.*, 97-2706-CIV-T25E, 2000 WL 33339613, at *11 (M.D. Fla. Mar. 22, 2000). Here, Plaintiff's purported class does not align with the specific facts that comprise *his* claim, rendering his complaint not maintainable as a class action on its face as a matter of law. *Oginski v. Paragon Properties of Costa Rica, LLC*, 2011 WL 3489541, *3 (S.D. Fla. Aug. 9, 2011) (dismissal at the pleading stage is "appropriate ... where a defendant demonstrates 'from the face of the complaint that it will be impossible to certify the classes alleged by the plaintiff regardless of the facts the plaintiff may be able to prove"). Plaintiff has an issue that is unique to him in this case: his mobile

15

number and name *did* provide prior express written consent to receive a phone call. This fact alone renders him wholly incapable of representing a typical class under the TCPA. *See Vega,* 564 F.3d at 1276-77; *see Romano v. Motorola, Inc.*, No. 07–CIV–60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007). The complete record demonstrates that Plaintiff entered his cell phone number and email address and submitted an inquiry to view two properties. *See* Ex. B, at 2-3. This defense makes Plaintiff atypical of any hypothetical putative class members and is not consistent with the class definition.

### C.     Individual Questions Predominate Commonality

Plaintiff bears the burden of establishing the Rule 23(b)(3) requirement that class-wide issues predominate. *See, e.g., Miller v. Wells Fargo Bank, N.A.*, No. 1:16-CV-21145-UU, 2017 WL 698520, at *8 (S.D. Fla. Feb. 22, 2017). As noted above, the TCPA's DNC provision only prohibits "telephone solicitations" where (among other things) the plaintiff did not give his "prior express invitation or permission"–i.e., his consent–to receive the call. 47 U.S.C. § 227(c)(5); 47 C.F.R. §§ 64.1200(c)(2) & (f)(15). Thus, the legal and factual issues of consent are inextricably intertwined with Plaintiff's proposed class definition. Courts routinely deny class certification in TCPA cases on predominance grounds where individualized determinations of "consent" are needed. *See, e.g., New Concept Dental v. Dental Res. Sys., Inc.,* 2020 WL 3303064, at *9-10 (S.D. Fla. Mar. 3, 2020); *Newhart v. Quicken Loans Inc.*, 9:15-CV-81250, 2016 WL 7118998, at *2 (S.D. Fla. Oct. 12, 2016). Courts also often strike class allegations at the pleadings stage and/or grant pre-discovery motions to deny certification, in TCPA cases and in others, where individualized determinations of "consent" are needed. *See, e.g., Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *4 (C.D. Cal. Dec. 21, 2016); *Cholly v. Uptain Grp., Inc.*, 2017 WL 449176, at *4 (N.D. Ill. Feb. 1, 2017). This Court should rule similarly on individualized consent in this case.

Moreover, the same is true as to whether the class members have a "residential" number—as the uses of a phone number can vary substantially by individual. Therefore, whether calls here were made without the Plaintiff or the class member's consent, were made to a "residential" number, and/or constituted a "telephone solicitation," are not common questions of law or fact resolvable by generalized proof. Rather, they necessitate individualized factual and legal inquiry.

### D. Plaintiff's Class Definition is Fatally Overbroad.

Plaintiff's class definition is fatally overbroad in that it fails to exclude persons that: (1) consented to be called; or (2) have "an established business relationship" with Lennar Sales. FAC ¶ 35. As discovery cannot possibly change this result—the class allegations should be stricken. *Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301, 310 (S.D. Fla. 2017) ("Before a court grants a party's request to proceed as a class, a plaintiff must also establish that the proposed class is 'adequately defined and clearly ascertainable.'"); *Eden Day Spa, Inc. v. Loskove*, No. 14-81340-CIV, 2015 WL 1649967, at *2 (S.D. Fla. Apr. 14, 2015). The Court cannot possibly identify class members with justiciable TCPA claims absent an individualized review of each member's consent to receive calls, as well as his/her relationship with Lennar Sales. Accordingly, the class definition must be stricken.

Second, the class is so overbroad as to sweep within it all persons who were called by Lennar Sales "for substantially the same reason [Lennar Sales] called Plaintiff." FAC ¶ 35. Under an ascertainability analysis, courts examine whether a class definition is overbroad and includes persons who were not injured or who can show no damages. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276 (11th Cir. 2019). Here, Plaintiff's proposed class is fatally overbroad because it includes putative class members who received non-solicitation phone calls, and as such have not suffered any compensable injury under the TCPA.

## V.     PLAINTIFF'S IMMATERIAL JOB POSTING REFERENCE SHOULD BE STRICKEN

Paragraph 23 of the FAC is impertinent, immaterial, and scandalous and is only meant to prejudice Defendant. A court should strike impertinent, immaterial allegations from the complaint when the allegations lack relevance to the claims. *Sec. & Exch. Comm'n v. Walker*, 20-62564-CIV, 2021 WL 5088854, at *2 (S.D. Fla. Aug. 16, 2021) (striking several affirmative defenses that were insufficiently pled or did not raise facts or legal issues relevant to the complaint's allegations). In Paragraph 23, Plaintiff includes reference to a job posting for a completely unrelated job for a completely different company in an attempt to discredit Defendant. FAC ¶ 23. Notably, Plaintiff is aware that this paragraph is unrelated to his claim and states "[j]ob postings for different Lennar positions list cold calling as a required job qualification." *Id.* Plaintiff then includes the qualifications for a job posting for a mortgage loan origination associate. *Id.* However, Plaintiff does not allege that a mortgage loan origination associate called Plaintiff. Plaintiff's reference to the job posting should be stricken from the FAC because it is impertinent, immaterial, and scandalous and is only meant to prejudice Defendant.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant Lennar Corporation respectfully requests that this Court enter an order dismissing the FAC, or in the alternative, striking the class allegations and paragraph 23 of the FAC, and providing any other such relief the Court deems just and proper.

DATE:  April 18, 2024                    Respectfully submitted,

*/s/ Stephen C. Richman*
TRACI H. ROLLINS, ESQ.
Florida Bar No. 769071
STEPHEN C. RICHMAN, ESQ.
Florida Bar No. 1015692
GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, Florida 33401
Telephone: (561) 650-0510
Facsimile: (561) 655-5677
Email: trollins@gunster.com
Email: srichman@gunster.com

BENJAMIN G. FINKELSTEIN, ESQ.
Florida Bar No. 1049040
GUNSTER, YOAKLEY & STEWART, P.A.
450 East Las Olas Blvd, Suite 1400
Fort Lauderdale, Florida 33301
Telephone: (954) 468-1398
Email: bfinkelstein@gunster.com

*Counsel for Defendant Lennar Corporation*

## Certificate of Service

I certify that on April 18, 2024, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to all CM/ECF registered parties.

*/s/ Stephen C. Richman*
Stephen C. Richman